Erin A. Hertzog (SBN 030770)
Hertzog Law, PLLC
10105 East Via Linda
Suite 103, PMB 11013
Scottsdale, Arizona 85258
EMAIL: erin@employerlegalservices.com
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Estella Rivera Varela,<br><br>        Plaintiff,<br><br>   v.<br><br>Tucson Electric Power, Inc., an Arizona corporation; UNS Energy Corporation, an Arizona corporation; Brenda Stopani and John Doe, husband and wife, Defendants XYZ; Corporations I-X; Black and White Partnerships I-X and Does I-X under Fictitious Names<br><br>        Defendants. | **PLAINTIFF'S COMPLAINT** |

Plaintiff Estella Rivera-Varela ("Plaintiff") asserts the following allegations and claims against Defendants as follows:

**GENERAL ALLEGATIONS**

1.  Plaintiff is a resident of Tucson, Arizona and was a resident of Pima County at all relevant times.

2.  Defendant Tucson Electric Power (hereinafter "TEP") is an Arizona corporation headquartered and doing business in Pima County, Arizona.

3.  UNS Energy is an Arizona corporation and the parent company of TEP also headquartered and doing business in Pima County, Arizona.

Upon information and belief, Defendant Brenda Stopani (hereinafter "Stopani") and John Doe, are married individuals who are currently and at all relevant times herein were residents of Pima County, Arizona.

4. Plaintiff has sued Defendants XYZ, Corporations I-X, Black and White Partnerships I-X, and Does I-X under Fictitious Names. Plaintiff is informed and therefore believes that said Defendants are in some way responsible for the acts complained of herein. When their true identities have been ascertained, Plaintiff will seek leave of Court to amend the Complaint.

5. Defendants have committed acts and caused events to occur in the County of Pima, State of Arizona which are the foundation of this action and out of which this action arises.

6. At all relevant times, Defendants operated as joint employers, exercising joint and shared control over the terms and conditions of Plaintiff's employment.

7. Defendants are "covered employer[s]" within the meaning of the Family and Medical Leave Act ("FMLA"), 29 C.F.R. § 825.104 (a).

8. Likewise, Defendants are Plaintiff's "Employers" as that term is defined in A.R.S. § 23-371.

9. Both jurisdiction and venue are proper.

## JURY DEMAND

10. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

11. Plaintiff was employed by Defendants for over 33 years, most recently in the position of Procurement Specialist.

12. Plaintiff was an exemplary employee who performed with distinction, competence, and to the Company's benefit. She was hard-working and consistently received high praise and recognition for her performance. Additionally, she received numerous promotions, performance-based bonuses and merit increases to her base pay throughout her long tenure with the Company.

13. Unfortunately, starting in 2019 and continuing up until her termination in June 2020, Plaintiff was subjected to a pattern and practice of unlawful discrimination on the basis of her age (56 years old).

14. In February 2020, Defendants gave Plaintiff her annual performance review and rated her as meeting expectations. She received a merit-based salary raise and performance-based bonus as a result.

15. Despite the satisfactory review and increases to her pay, Plaintiff was informed by her supervisor that she was being put on a Performance Improvement Plan ("PIP") for alleged concerns related to her job skill and ability and her overall performance.

16. The PIP was wholly without merit and based on false and manufactured performance issues that never existed prior and in many cases that were directly contradicted by the Plaintiff's well-documented performance history including her recent annual evaluations.

17. The PIP was also highly subjective and lacked measurable criteria for demonstrating improvements.

18. In issuing the PIP, Defendants contradicted its owns progressive discipline policy set forth in the Employment Handbook for the Company in which employees are supposed to receive verbal and written warnings of performance related issues first and only if the issues persist does the Company consider a PIP as a next step. Prior to receiving the PIP, Plaintiff did not receive any notice or warning that there were concerns about her performance.

19. Defendants gave Plaintiff until June 30, 2020 to demonstrate improvement to her performance. The PIP stated that in the event she did not show improvement by this date, the PIP may be extended.

20. In or around February or March 2020, Plaintiff began raising concerns about the frivolous PIP to Human Resources and her belief that the corrective action was actually evidence of illegal discrimination and/or retaliation.

21. Specifically, in a 1:1 in-person meeting with Kristy Porter of Human Resources in March 2020 to discuss concerns about the PIP, Plaintiff raised concerns that she was being targeted by the Company since she had met the Rule of 85. The "Rule of 85" is a benchmark for an employee to become eligible early retirement and the rule is met when combined total of an employee's age and years with the Company is 85 or more.

22. At the time, Defendants had an institutionalized pattern and practice of routinely tracking and identifying when older employees meet the Rule of 85 and this well-documented practice was implemented as part of the Company's succession planning procedures and the annual performance bonus meetings.

23. While the practice appears facially neutral, it is routinely used to target older employees solely on the basis of their age and retirement eligibility and once an employee is identified as eligible for retirement by way of the Rule of 85, they become vulnerable to an illegal age discrimination scheme aimed at increasing turnover of older employees of the Company in favor of replacing the older workforce with younger workers.

24. This scheme most often starts with the Company searching for and then eventually raising frivolous, false and/or unwarranted performance issues against the senior employee to justify threatening or subjecting the employee to pretextual discipline in the form a baseless Performance Improvement Plan ("PIP") or similar measure in which their position with the Company is at risk for termination.

25. Often the issues giving rise to the discipline and the performance objectives in the PIP itself will be egregiously subjective, unpredictable and significantly less favorable and far higher than the expectations previously placed on the senior employee in their tenure with the Company, as well as the expectations placed on similarly situated younger employees at that time.

26. This discriminatory pattern eventually tends to culminate in one of two outcomes: either (1) the employee is subjected to significant pressure to leave the Company and/or retire early in order to avoid losing benefits like severance pay and PEP incentive pay OR (2) the performance issues are used to justify terminating the employee for cause as a pretext for discrimination.

27. . The employee is usually then replaced with a much younger worker or their position is subject to reorganization efforts aimed at hiring younger workers into the Company for succession purposes.

28. Plaintiff is aware of over a dozen current or former employees who have been subjected to an identical pattern and practice of age discrimination upon reaching the Rule of 85.

29. From February 2020 until June 2020, Plaintiff was subjected to this illegal scheme of age discrimination starting with the issuance of the PIP and culminating in her termination from the Company in June 2020 on the false and pretexual basis that she had not met the performance improvement criteria set forth in her written PIP.

30. During the performance improvement period, Plaintiff received several acknowledgements from Defendants confirming various improvements in her work performance as it related to the improvement areas set forth in the PIP. These acknowledgements included but were not limited to a meeting in May 2020 with her direct supervisor and upper level management in which Defendants informed her of several areas in which she had demonstrated significant performance improvement.

31. Likewise, Plaintiff received significant positive feedback about her performance during this period from her coworkers and peers, as well as the Company's legal department.

32. On or around June 10, 2020, at the express recommendation of her medical provider, Plaintiff submitted an additional request for protected FMLA leave after being diagnosed with severe stress, depression, fatigue and anxiety. Defendants notified her that she was eligible for FMLA leave.

33. At this time, Plaintiff had been on intermittent FMLA leave for several months in order to assist her mom with a serious health condition. As such, she was already subject to the FMLA protections.

34. On June 22, 2020, prior to the expiration of her PIP, Plaintiff was required to attend to a conference call meeting with her direct supervisor and HR where she was told that she was being terminated from the Company due to not meeting the performance improvement expectations in her PIP.

35. At the time of her termination, Plaintiff was on protected FMLA leave and her performance improvement deadline in the PIP had not passed. By terminating her,

Defendants therefore prevented her from using the remainder of her protected leave and deprived her of the right to return to her position after she had the opportunity to seek treatment and recover from health condition so that her performance was not impaired or impacted.

36. Plaintiff subsequently received notice that the FMLA leave she requested on June 10, 2020 and was deemed eligible for was subsequently denied on the basis that her serious health condition did not qualify as a basis for FMLA leave. This decision is contrary to the requirements for protected FMLA as set forth in the Act.

37. Defendants failed to provide Plaintiff with timely notice of this denial or any basis for the denial such as deficiencies related to her medical certification.

38. Defendants also did not engage in any interactive process for considering accommodation alternatives and options for leave under the ADA.

39. Despite being told that she was terminated for performance issues, Plaintiff was offered a severance package, which included additional COBRA benefits, as well as 2020 annual incentive pay. Per the express terms of the severance plan, these benefits are only available to employees terminated from the company without cause.

40. At the time of her termination, Plaintiff was 56 years old.

41. Defendants later replaced Plaintiff with a significantly less experienced and much younger female who upon information and belief was approximately 35 years old and had no prior employment tenure with the Company.

42. Defendants' basis for terminating Plaintiff was false and pretextual and the true basis for her discharge was age discrimination.

43. In April 2021, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants alleging age and disability, as well as unlawful retaliation in violation of the ADEA and ADA.

44. On March 1, 2023, the EEOC issued a Notice of Right to Sue and this Complaint has been timely filed within 90 days of receipt of the Notice.

45. Plaintiff is damaged by the wrongful acts of Defendants.

46. All allegations of this Complaint are incorporated into each claim for relief in this Complaint.

### First Cause of Action
### (FMLA Retaliation)
### (Against All Defendants)

47. Plaintiff incorporates by reference all of the previous allegations in thus Complaint as if fully set forth herein.

48. At all relevant times, Defendants were covered employers under the FMLA because they were engaged in an industry affecting commerce, and it employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calenda year 29 U.S.C. § 2611(4).

49. Plaintiff was covered under the FMLA as an employee with a serious health condition employed by Defendant for at least twelve months, and who had performed at least 1,250 hours of service during the previous twelve-month period. Id. § 2611(2). year.

50. At all relevant times, Plaintiff was an FMLA-eligible employee with a serious health condition employed by Defendant for at least twelve months, and who had performed at least 1,250 hours of service during the previous twelve-month period. *Id.* § 2611(2).

51. Plaintiff invoked the protections of the FMLA by taking intermittent FMLA leave throughout all of 2020 to care for her mother's serious condition and by subsequently notifying Defendants of her need to take up to twelve (12) weeks of FMLA leave due to a qualifying serious health condition in early June 2020.

52. Defendants violated the FMLA by retaliating against Plaintiff with baseless corrective action and subsequently terminating her 33-year employment while on protected leave and prior to the deadline provided by Defendants under her performance improvement plan.

53. Defendants retaliated against Plaintiff, at least in part, because she exercised her rights under the FMLA.

54. Defendants' retaliatory actions and unlawful employment practices were willful, wanton, malicious and in bad faith, and conducted deliberately or with reckless indifference to the federally protected rights of Plaintiff.

55. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has suffered and continues to suffer substantial losses, including past and future lost wages and benefits.

56. Plaintiff is entitled to all legal and equitable remedies available for violations of the FMLA, including an award of liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 2617.

**Second Cause of Action**
**(FMLA Interference)**
**(Against All Defendants)**

57. Plaintiff incorporates by reference all of the previous allegations in thus Complaint as if fully set forth herein.

58. At all relevant times, Defendants were covered employers under the FMLA because they were engaged in an industry affecting commerce, and it employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year. 29 U.S.C. § 2611(4).

59. At all relevant times, Plaintiff was an FMLA-eligible employee.

60. In June 2020, Plaintiff notified, Defendants of her need to take up to twelve (12) weeks of FMLA leave to seek treatment and recovery of her serious health condition.

61. Although Plaintiff was entitled to FMLA leave, Defendants refused to allow her to use the full amount of her FMLA leave and denied t

62. Defendants engaged in prohibited conduct under the FMLA by interfering with, restraining, or denying Plaintiff's rights provided under the Act.

63. Defendants' actions foreclosed Plaintiff's rights under the FMLA, including but not limited to the right to fully use the full amount of her FMLA leave and subsequently return to her position of employment with the entire time period remaining under

performance improvement plan, the right to timely notice of her FMLA eligibility, as well an opportunity to cure any deficiencies related to her medical certification (if applicable) be returned to her position of employment following leave the right to not be free from threats and harassment for exercising her rights under the law.

64. Defendants' retaliatory actions and unlawful employment practices were willful, wanton, malicious and in bad faith, and conducted deliberately or with reckless indifference to the federally protected rights of Plaintiff.

65. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has suffered and continues to suffer substantial losses, including past and future lost wages and benefits.

66. Plaintiff is entitled to all legal and equitable remedies available for violations of the FMLA, including an award of liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 2617

### Third Cause of Action
### (ADA Disability Discrimination)
### (Against All Defendants)

67. Plaintiff incorporates by reference all of the previous allegations in this Complaint as if fully set forth herein.

68. At all relevant times, Defendants qualified as an "employer" as defined by the Americans with Disabilities Act.

69. At all times relevant to this complaint, Plaintiff was an "employee" as defined by the ADA.

70. At all relevant times, Plaintiff was a disabled individual qualified to perform the primary duties of her job with or without an accommodation.

71. Defendant discriminated against Plaintiff by terminating her employment on the basis of her disability.

72. Defendant discriminated against Plaintiff on the basis of her disability by failing to provide reasonable accommodations to Plaintiff. and by failing to enegage in an

interactive process to consider possible reasonable accommodations for Plaintiff to perform her essential job functions.

73.    Plaintiff's qualifying disability and request for a reasonable accommodations were a motivating factor for Defendants' decision to engage in the aforementioned adverse employment actions.

74.    The acts, policies and practices of Defendants, as alleged herein, violate the disability and retaliation discrimination provisions of the Americans with Disability Act of 1990 ("ADA").

75.    Defendant acted willfully and/or with reckless indifference when it denied Plaintiff's reasonable accommodation request and subsequently discriminated against Plaintiff on the basis of her disability.

76.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered special damages including but not limited to past and future loss of income, benefits, and other damages to be proven at time of trial.

77.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered general damages including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses to be proven at the time of trial.

78.    Plaintiff is entitled to economic and pain and suffering damages as a result of Defendants' unlawful discrimination and retaliation in violation of the ADA.

79.    Plaintiff is entitled to recover her attorneys' fees and costs incurred herein. *42 U.S.C. § 2000e-5(k); 42 U.S.C. § 12205.*

**Fourth Cause of Action**
**(Age Discrimination/Retaliation)**
**(Against All Defendants)**

80.    Plaintiff incorporates by reference all of the previous allegations in thus Complaint as if fully set forth herein.

81.    Plaintiff was at all relevant times an "employee" within the meaning of *29 U.S.C. § 630(f)*.

82. Consistent with *29 U.S.C. § 631*, Plaintiff was at all relevant times over 40 years old.

83. Defendants were at all relevant times an "employer" within the meaning of *29 U.S.C. § 630(b)*.

84. Defendants intentionally, willfully and repeatedly engaged in a pattern, practice, and/or policy of discrimination in violation of the ADEA with respect to Plaintiff and the Collective. This pattern, practice, and/or policy includes, but is not limited to: a. Willfully cultivating a corporate culture of age discrimination; fired Plaintiff because of her age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA").

85. As a proximate result of Defendant's wrongful discrimination and unlawful termination, Plaintiff has been damaged.

86. Plaintiff is also entitled to recover attorneys' fees and costs reasonably incurred in bringing this claim.

87.

88. The acts, policies and practices of Defendants, as alleged herein, violate the ADEA's age discrimination provisions.

89. Plaintiff timely filed a charge of age discrimination. The EEOC issued its Notice of Right to Sue thereafter.

90. Defendants also maintained a pattern and practice of age discrimination and, by the use of facially neutral employment practices and on other occasions by the use of excessively subjective standards for selection of those to be promoted, demoted, discharged or disciplined, caused a significant, adverse and discriminatory impact upon disabled employees.

91. Plaintiff engaged in protected activity in February or March 2020 by complaining to Kristy Porter,

92. Defendants' unlawful employment practices were willful, wanton, malicious and in bad faith, and conducted deliberately or with reckless indifference to the federally protected rights of Plaintiff.

93. As a direct and proximate result of Defendant's discriminatory conduct as alleged herein, Plaintiff suffered and will continue to suffer economic damages, including but not limited to lost wages and benefits, lost back pay and front pay, and other forms of compensation and opportunities.

1. Plaintiff is damaged by Defendant's violations of the ADEA as hereinabove alleged or as proven at trial.

**Fourth Cause of Action**
**(Unlawful Retaliation)**
**(Against All Defendants)**

2. Plaintiff incorporates by reference all of the previous allegations in thus Complaint as if fully set forth herein.

3. In early 2020, Plaintiff was exercising her right to protected FMLA leave to care for her mother.

4. In June 2020, Plaintiff qualified for FMLA leave because of her serious health condition. *29 U.S.C.A. §2612*.

5. Defendants engaged in prohibited conduct under the FMLA by interfering with, restraining, or denying Plaintiff's rights provided under the Act.

WHEREFORE, Plaintiff requests judgment in his favor and against Defendants as follows:

A. For all injunctive and declaratory relief necessary, including a declaration that Defendants' conduct violated the law;

B. For actual, consequential, and incidental damages as alleged herein or as proven at trial;

C. For punitive and liquidated damages;

D. For Plaintiff's attorneys' fees and costs incurred in this matter pursuant to the FMLA and any other applicable statute, rule, or regulation;

E. For interest on each element of damage, cost, or attorneys' fees at the highest legal rate from the date such damage, cost, or attorneys' fees was incurred until paid; and

F. For such other and further relief as the Court deems just and proper.

RESPECTFULLY submitted this 26th day of May, 2023.

**HERTZOG LAW, PLLC**

By: _____
Erin A. Hertzog
*Attorney for Plaintiff*